USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-4-08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

ALLISON THIES and ARTHUR THIES, collectively and individually, on behalf of JILLIAN THIES,

Plaintiffs,

v.

NEW YORK CITY BOARD OF EDUCATION, d.b.a. NEW YORK CITY DEPARTMENT OF EDUCATION, and JOEL KLEIN, in his official capacity as Chancellor of the New York City School Districts,

Defendants.

---------------------------------------------------------------X

07 Civ. 2000 (RMB)

**DECISION & ORDER**

## I. Background

On or about March 8, 2007, Allison and Arthur Thies ("Plaintiffs" or "Parents") commenced this action pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 et seq., on behalf of their daughter, Jillian ("Jillian" or "Child"), against the New York City Board of Education and Chancellor Joel Klein (collectively, "Defendants"). Plaintiffs seek $8,000 in tuition reimbursement for enrolling Jillian in the (private) Francis School for the 2005-06 school year. See Complaint, dated March 8, 2007.

The parties agree that (i) Jillian attended public Intermediate School 2 during the 2004-05 school year (Pl. Rule 56.1 Statement, dated Aug. 14, 2007 ("Pl. 56.1"), ¶ 7; Def. Rule 56.1 Response Statement, dated Oct. 5, 2007 ("Def. 56.1"), ¶ 7); (ii) on June 27, 2005, the New York City Department of Education's Committee on Special Education ("Committee") designated Jillian "emotionally disturbed" and created an Individual Education Program ("IEP") for her for the 2005-06 school year, recommending "placement in a highly structured, intensely supervised

educational setting . . . to address [Jillian's] specific academic [and] social-emotional needs" (Pl. 56.1 ¶¶ 11, 14; Def. 56.1 ¶¶ 11, 14); (iii) by letter dated August 16, 2005, and while the Committee's search for an appropriate public school placement for Jillian was in progress, Plaintiffs notified the Committee that they "ha[d] unilaterally placed Jillian at the Francis School and [were] seeking tuition reimbursement for this placement" (Pl. 56.1 ¶ 1; Def. 56.1 ¶¶ 1, 65); (iv) on August 17, 2005, i.e. the day after Plaintiffs requested tuition reimbursement, Allison Thies visited Martin DePorres High School ("Martin DePorres"), the Committee's proposed placement, and "rejected the placement" (Pl. 56.1 ¶¶ 16, 19; Def. 56.1 ¶¶ 16, 19); and (v) on September 13, 2005, the Committee re-affirmed Martin DePorres as Jillian's placement for the 2005-06 school year, though Jillian had (unilaterally) matriculated at the Francis School approximately a week before. (Pl. 56.1 ¶ 20; Def. 56.1 ¶ 20).

A New York State Impartial Hearing Officer reviewed, pursuant to the IDEA, Plaintiffs' request for tuition reimbursement and determined that Defendants "shall reimburse [Plaintiffs] for tuition at the Francis School for 2005-06." See Findings of Fact and Decision, No. 101263, dated Aug. 28, 2006. The New York State Department of Education, on November 15, 2006, reversed the Impartial Hearing Officer decision and found that "Martin DePorres offered [Jillian] appropriate educational services." See Application of a Child with a Disability, Appeal No. 06-114, dated Nov. 15, 2006. Plaintiffs "ha[d] not met their burden to prove that Francis was an appropriate placement for their daughter" and Plaintiffs "withdrew their daughter [from public school] while the development and determination of an appropriate program and placement were still in progress." See id.

On or about August 14, 2007, Plaintiffs moved for summary judgment, arguing that (1) "the IEP created on September 13, 2005 . . . [was] procedurally invalid and void"; (2) the

"Martin DePorres School would [not] have been consistent with Jillian's educational needs"; (3) "the Francis School conferred an educational benefit to Jillian"; and (4) "the fact that Francis School is a general education school should not bar awarding tuition reimbursement." (Pl. Mem. in Supp. of Mot. for S.J., dated August 14, 2007 ("Pl. Mem."), at 8, 13, 17, 20.)

On or about October 5, 2007, Defendants opposed Plaintiffs' motion and cross-moved for summary judgment, arguing that (1) "the proposed IEP substantially complied with the procedural requirements of the IDEA"; (2) "Martin DePorres was an appropriate placement"; (3) "the private education services obtained by the parents were inappropriate to the child's needs"; and (4) "the equities weigh against an award of tuition for the parents." (Def. Mem. in Opp. to Pl.'s Mot. for S.J., dated October 5, 2007 ("Def. Mem."), at 13, 15, 18.) Plaintiffs opted not to file a reply brief and both parties waived oral argument.

**For the reasons set forth below, Plaintiffs' motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted.**

## II. Legal Standard

"A parent dissatisfied with a state review officer's decision to deny tuition reimbursement may bring a civil action in federal district court." Bettinger v. New York City Bd. of Educ., No. 06 Civ. 6889, 2007 WL 4208560, at *4 (S.D.N.Y. Nov. 20, 2007); see also 20 U.S.C. § 1415(i)(2)(A). "IDEA actions in federal court generally are resolved by . . . summary judgment." See J.R. v. Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004).

"While federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of

educational policy." Sherman v. Mamaroneck Sch. Dist., 340 F.3d 87, 93 (2d Cir. 2003) (internal citation and quotation omitted).

## III. Analysis

### (1) Procedural Compliance

Plaintiffs argue, among other things, that "not having the parents present at the September 13, 2005 Committee meeting clearly infringe[d] upon . . . their opportunity to participate" and "share [their] opinion as to why the placement at Martin DePorres was not appropriate for Jillian." (Pl. Mem. at 10-11.)

Defendants counter, among other things, that the meeting on September 13, 2005 was "ministerial" only and "there is no basis to conclude that Plaintiffs' concerns would have altered the Committee's conclusion that placement at Martin DePorres was an appropriate placement." (Def. Mem. at 13–15.)

Plaintiffs' absence at the September 13, 2005 meeting did not "result in the loss of educational opportunity or seriously infringe on [their] participation in the creation or formulation of the IEP." See W.S. v. Rye City Sch. Dist., 454 F. Supp. 2d 134, 138 (S.D.N.Y. 2006). Plaintiffs' absence "caused no harm or prejudice to [Jillian] or [her] parents" because, among other things, Allison Thies attended "the [June 27, 2005] meeting where the [] IEP was promulgated"; Mrs. Thies "rejected the placement" at Martin DePorres weeks before the September 13, 2005 meeting; and Jillian was already matriculated in the Francis School when the September 13, 2005 meeting took place. See A.C. v. Bd. of Educ. of Chappaqua Cent. Sch., No. 06 Civ. 4238, 2007 WL 1259145, at *4 (S.D.N.Y. Apr. 27, 2007).

**(2) Martin DePorres Designation**

Plaintiffs argue, among other things, that "it would not [have] be[en] appropriate for Jillian to be in a school [like Martin DePorres] where there were very few girls"; "students at Martin DePorres [exhibit] aggressive behaviors"; and "the proposed class did not have a suitable and functional peer group for Jillian." (Pl. Mem. at 15–17.)

Defendants counter, among other things, that "[t]he instructional program and related services offered to Jillian at Martin DePorres were entirely consistent with her needs as set forth in her IEP . . . to which [Plaintiffs] never voiced even a single concern" and "Martin DePorres provides educational services to emotionally disturbed students, such as Jillian." (Def. Mem. at 11–13.)

Plaintiffs fail to show that "the services offered by [Defendants] were inadequate." See W.S., 454 F. Supp. 2d at 138. "What the [IDEA] guarantees is an appropriate education, not one that provides everything that might be thought desirable by loving parents." Walczak v. Fla. Sch. Dist., 142 F.3d 119, 132 (2d Cir. 1998) (citation omitted). Martin DePorres appears to have been an appropriate school to implement Jillian's IEP and provide "educational instruction specially designed to meet [her] unique needs." See Bd. of Educ. v. Rowley, 458 U.S. 188, 188-89 (1982).

**(3) Francis School**

Plaintiffs argue, among other things, that Jillian feels "happy and safe" at the Francis School; she "has never been the target of cruel jokes, bullied, or teased"; she has "honor roll status"; she "is relaxing more and is becoming much more animated"; she is "no longer emotionally disturbed"; and "she no longer need[s] any special education." (Pl. Mem. at 18–20.)

Defendants argue, among other things, that "the educational director [at the Francis School] was not familiar with Jillian's IEP" during the 2005–06 school year and "to the extent that her special educational needs . . . were met, they were not met through any program at the Francis School, but through supplemental private counseling and therapeutic services." (Def. Mem. at 15–17.)

Plaintiffs do not meet "the[ir] burden of demonstrating that the private placement [was] appropriate." See Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir. 2006). Jillian's progress "does not itself demonstrate that [the] private placement was appropriate" because she did not receive "educational instruction specifically designed to meet [her] unique needs." See Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 115 (2d Cir. 2007) (emphasis in original) (citation omitted). "Indeed, even where there is evidence of success, courts should not disturb a state's denial of IDEA reimbursement where, as here, the chief benefits of the chosen school . . . might be preferred by parents of any child, disabled or not." See id.

**(4) Balance of Equities**

Plaintiffs argue, among other things, that "the ineffectiveness in the way in which the public school deal[t] with [bullying]", "Jillian's academic achievement at the Francis School", "her social/emotional well being", and her current status as "non handicapped", weigh in favor of tuition reimbursement. (Pl. Mem. at 22–23.)

Defendants argue, among other things, that "more than three weeks prior to the start of the school year, before Plaintiffs had visited Martin DePorres . . . , [they] unilaterally placed Jillian in the Francis School" and Plaintiffs did not "raise[] any issues regarding the [Committee's] efforts being made to secure a placement for Jillian." (Def. Mem. at 18–20.)

"[T]he parents have not sustained their burden of proving that equitable considerations favor their claim." Carmel Cent. Sch. Dist. v. V.P., 373 F. Supp. 2d 402, 417 (S.D.N.Y. 2005). "[B]y selecting [the Francis School] without first fulfilling their obligation to work together with school officials to find a placement that was appropriate," Plaintiffs demonstrated that they did not seriously intend to enroll Jillian in public school. See Tucker v. Bay Shore Sch. Dist., 873 F.2d 563, 567 (2d Cir. 1989).

## IV. Conclusion

For the reasons set forth above, Plaintiffs' motion for summary judgment [#14] is denied and Defendants' cross-motion for summary judgment [#17] is granted. It is respectfully requested that the Clerk close this case.

Dated: New York, New York
February 4, 2008

RMB

**Hon. Richard M. Berman, U.S.D.J.**